## EXHIBIT II
## SUBSCRIPTION AGREEMENT

This booklet contains the following documents which must be executed and delivered by you if you wish to invest in Pinnacle FX Investments, LP, L.P.:

**Natural Persons Investors Who Wish to Invest**

A. Notarized Subscription Agreement;
B. Confidential Purchaser Questionnaire (Natural Persons);
C. Certification of Non-Foreign Status; and
D. Notarized  Pinnacle FX Investments, LP,. Limited Partnership Agreement Signature Page.

There may also be attached additional documents required under the securities laws of your state which must be signed and returned as aforesaid.

**Entity Investors That Wish to Invest**

A. Notarized Subscription Agreement;
B. Confidential Purchaser Questionnaire (Entities);
C. Certification of Non-Foreign Status; and
D. Notarized Pinnacle FX Investments, LP, Limited Partnership Agreement Signature Page.

There may also be attached additional documents required under the securities laws of your state which must be signed and returned as aforesaid.

All prospective investors should submit their executed subscription documents along with a check payable to Pinnacle FX Investments, LP, to, Pinnacle FX Investments, Inc., 1685 H Street, Suite 1031 Blaine, Washington  98230. If the General Partner rejects a subscription, either in whole or in part (which decision is in the sole discretion of the General Partner), the rejected subscription funds or the rejected portion thereof will be returned promptly to the prospective investor without interest thereon. The minimum subscription is $250,000 per investor; however; the General Partner, in its sole discretion, may waive such minimum investment requirement from time to time.  Questions regarding completion of these documents should be directed to Mr. Roland Francis at (877) 893-1415.

**ALL DOCUMENTS MUST BE FILLED IN AND SIGNED EXACTLY AS SET FORTH WITHIN.**

# EXHIBIT A Pinnacle FX Investments, LP

ITEM A

Pinnacle FX Investments, LP

SUBSCRIPTION AGREEMENT

Pinnacle FX Investments, LP
1685 H Street, Suite 1031
Blaine, Washington 98230

Gentlemen:

The undersigned subscriber or subscribers (hereinafter, the "Purchaser") has received and carefully read the Pinnacle FX Investments, LP, L .P. Confidential Investment Summary dated February 15, 2007, and supplements, if any, thereto (collectively, the "Investment Summary"), including, without limitation, the Limited Partnership Agreement (the "Agreement"), which describes the terms and conditions by which a prospective investor may participate in Pinnacle FX Investments, LP, a Delaware limited partnership (the "Partnership"). Terms used and not defined herein shall have the same meaning as in the Agreement.

**1. Subscription.** Subject to the terms and conditions of this subscription agreement (the "Subscription Agreement") and the provisions of the Agreement, the Purchaser hereby irrevocably subscribes for and agrees to invest the amount indicated on the signature page hereof in the Partnership and hereby tenders this Subscription Agreement, together with a check in such amount, payable to Pinnacle FX Investments, L .P.

The Purchaser agrees that this subscription shall be irrevocable and shall survive the death or disability of the Purchaser. The Purchaser understands that if this subscription is not accepted, in whole or in part, funds received by the Partnership pursuant hereto will be returned to the Purchaser; without interest accrued thereon.

**2. Acceptance of Subscription.** The Purchaser acknowledges that the Partnership has the right to accept or reject this subscription, in whole or in part, for any reason, and that this subscription shall be deemed to be accepted by the Partnership only when it is signed on its behalf. The Subscription Agreement either will be accepted or rejected, in whole or in part, as promptly as practical after receipt. The Purchaser agrees that subscriptions need not be accepted in the order in which they are received by the Partnership. Upon rejection of this Subscription Agreement for any reason, all items received with this Subscription Agreement shall be returned to the Purchaser without deduction for any fee, commission or expense, and without accrued interest with respect to any money received, and this Subscription Agreement shall be deemed to be void ab initio and shall not bind the Partnership.

**3. Representations, Warranties and Covenants of the Purchaser** The Purchaser hereby represents and warrants to and covenants with the Partnership as follows:

(a) The Purchaser is an "accredited investor" as such term is defined in Rule 501 of Regulation D promulgated under the Securities Act of 1933, as amended (the "Securities Act"), and that the information contained in the Purchaser's Confidential Purchaser Questionnaire is complete, accurate, and true in all respects;

- 2 -                                                    Pinnacle FX Investments, LP

(b) The Purchaser has examined the Investment Summary and recognizes that each of the Partnership and the General Partner (as hereinafter defined) has limited financial and operating history, and that an investment in the Partnership involves a high degree of risk;

(c) The Purchaser has been advised that (i) there will be no market for the investment made in the Partnership; and (ii) it may not be possible to readily liquidate this investment;

(d) The Purchaser's overall commitment to investments which are not readily marketable is not disproportionate to his net worth; his investment in the Partnership will not cause such overall commitment to become excessive; and he can afford to bear the loss of his entire investment in the Partnership;

(e) The Purchaser has adequate means of providing for his current needs and personal contingencies and has no need for liquidity in his investment in the Partnership;

(f) The Purchaser satisfies any special suitability or other applicable requirements of his state of residence and/or the state in which the transaction by which the Units are purchased occurs;

(g) The Purchaser has such knowledge and experience in financial and business matters that he is capable of evaluating the merits and risks of an investment in the Partnership, or the Purchaser has employed the services of an investment adviser; independent attorney or accountant to read all of the documents furnished or made available by the Partnership both to him and all other prospective investors in the Units and to evaluate the merits and risks of such an investment on the Purchaser's behalf;

(h) The Purchaser has received, read and is familiar with the Investment Summary, including, without limitation, Exhibit A-"Risk Factors; Conflicts of Interest" and the Agreement;

(i) The Purchaser confirms that the Partnership has made available to the Purchaser the opportunity to ask questions of  and receive answers from, the general partner of the Partnership, Pinnacle FX Investments, Inc., a Washington corporation (the "General Partner"), concerning the Partnership and the activities of the Partnership as described in the Investment Summary, and otherwise to obtain any additional information, to the extent that the Partnership or the General Partner possess such information or could acquire it without unreasonable effort or expense, necessary to verify the accuracy of the information contained in the Investment Summary;

(j) The Purchaser hereby acknowledges that the Purchaser has been advised that this offering has not been registered with, or reviewed by, the Securities and Exchange Commission ("SEC") because this offering is intended to be a non-public offering pursuant to Section 4(2) and Regulation D of the Securities Act. The Purchaser represents that the Purchaser's Units are being purchased for the Purchaser's own account, for investment purposes only and not with a view for distribution or resale to others. The Purchaser agrees that the Purchaser will not sell or otherwise transfer the Units unless they are registered under the Securities Act or unless in the opinion of counsel satisfactory to the General Partner an exemption from such registration is available. The Purchaser understands that the Units have not been registered under the Securities Act by reason of a claimed exemption under the provisions of the Securities Act which depends, in part, upon the Purchaser's investment intention. In this connection, the Purchaser understands that it is the position of the SEC that the statutory basis for such exemption would not be present if the Purchaser's representation merely meant that the Purchaser's present intention was to hold such Units for a short period, such as the capital gains period of tax statutes, for a deferred sale or for any other fixed period. The Purchaser realizes that the SEC might regard a purchase with an intent inconsistent with the

Purchaser's representation to the Partnership, and a sale or disposition thereof, as a deferred sale to which the exemption is not available;

(k) The Purchaser understands that no securities administrator of any state has made any finding or determination relating to the fairness of this investment and that no securities administrator of any state has recommended or endorsed, or will recommend or endorse, the offering of the Units;

(1) The execution, delivery, and performance by the Purchaser of the Subscription Agreement are within the powers of the Purchaser; have been duly authorized and will not constitute or result in a breach or default under, or conflict with, any order, ruling or regulation of any court or other tribunal or of any governmental commission or agency, or any agreement or other undertaking, to which the Purchaser is a party or by which the Purchaser is bound; and, if the Purchaser is not an individual, will not violate any provision of the charter documents, bylaws, indenture of trust, or partnership agreement, as applicable, of the Purchaser. The signatures on the Subscription Agreement and Agreement are genuine, and the signatory, if the Purchaser is an individual, has legal competence and capacity to execute the same, or, if the Purchaser is not an individual, the signatory has been duly authorized to execute the same; and the Subscription Agreement constitutes the legal, valid and binding obligations of the Purchaser, enforceable in accordance with its terms;

(m) The Purchaser acknowledges that no general solicitation or general advertising (including communications published in any newspaper, magazine or other broadcast) has been received by him and that no public solicitation or advertisement with respect to the offering of the Units has been made to him;

(n) The Purchaser has relied solely upon the advice of his own personal financial and tax advisors, counsel and accountants as to the legal, tax, economic, and related matters concerning this investment and its suitability for the Purchaser before investing in the Partnership;

(o) The Purchaser understands that the Partnership will review this Subscription Agreement and the Purchaser's Confidential Purchaser Questionnaire and the Partnership is hereby given authority by the Purchaser to call the Purchaser's bank or place of employment or otherwise investigate or review the financial standing of the Purchaser; and it is further agreed that the Partnership reserves the unrestricted right to reject or limit any subscription and to close the offer at any time;

(p) The Purchaser understands that the Partnership is not and will not register as an investment company under the Investment Company Act, by reason of the provisions of Section 3(c)(1) thereof, which excludes from the definition of an investment company any issuer which has not made and does not presently propose to make a public offering of its securities and whose outstanding securities (other than short-term paper) are beneficially owned by not more than one hundred (100) persons. If the person is not a natural person, the Purchaser hereby certifies that:

      (i)      It is "one person" for purposes of Section 3(c)(1) of the Investment Company Act;

      (ii)      It was not formed for the purpose of investing in the Partnership nor did or will the shareholders, partners or grantor, as the case may be, of the Purchaser entity contribute additional capital for the purpose of purchasing interests;

      (iii)      Its shareholders, partners, beneficiaries or members are not permitted to opt in or out of particular investments made by the Purchaser, and each such person participates in investments made by the Purchaser pro rata in accordance with its interests in the Purchaser; and

                                              Pinnacle FX Investments, LP

(iv)     If the Purchaser is subscribing to purchase interests in excess of ten (10%) percent of the aggregate capital contributions made to the Partnership, the Purchaser's interest in the Partnership together with its interests, as of the Closing Date, in all other corporations, partnerships, trusts, or associations that are or would be excluded from the definition of an investment company solely by reason of the provisions of Section 3(c)(1) thereof (as described in this Section 3(p)), will not represent more than ten (10%) percent of the Purchaser's total assets, and the Purchaser agrees to provide the General Partner , as placement agent (the "Placement Agent") with any additional information reasonably requested by them in order to evidence the same;

(q) The Purchaser understands that the Partnership will pay, and the General Partner will generally receive, an Administrative Expense Allowance, as defined in the Agreement; that the Partnership may receive, a Placement Agent(s) a Fee in Lieu of Commissions, as defined in the Agreement; as defined in the Agreement. In furtherance thereof, the Purchaser represents and warrants to the General Partner and the Placement Agent that:

(i)     The Partnership Agreement constitutes an arms'-length contract between the Purchaser and the General Partner;

(ii)     If the Purchaser is an entity, the person representing the Purchaser who has executed this Agreement on its behalf is an "independent agent" (i.e., any person agreeing to act as the subscriber's agent in connection with this investment other than: (aa) the General Partner; an "affiliated person" of the General Partner, an affiliated person of an affiliated person of the General Partner or an "interested person" of the General Partner; (bb) a person who receives, directly or indirectly, any compensation in connection with this investment from the General Partner, an affiliated person of the General Partner, an affiliated person of an affiliated person of the General Partner; or an "interested person" of the General Partner; or (cc) a person with any material relationship between himself (or an affiliated person of the General Partner) that exists, or has existed at any time during the previous two (2) years) who fully understands the compensation arrangements between and among the Partnership, the General Partner, and their Affiliates and risks associated with the compensation arrangements. The Purchaser understands that the representative of the entity may be a partner, trustee, director, officer, or an employee of the company or the trustee, or any other person designated by the company or the trustee, but must be independent of the General Partner and its affiliates pursuant to the definition of independent agent provided in Rule 205-3 under the Investment Advisers Act of 1940, as amended; and

(iii)     If the Purchaser is a natural person, the Purchaser fully understands the compensation arrangements between and among the Partnership, the General Partner, and their Affiliates and risks associated with the compensation arrangements;

(r) For Washington Residents Only: The Purchaser acknowledges that the Units have not been registered under the Washington Uniform Securities Act, as amended (the "Connecticut Act"), and are subject to restrictions on transferability and sale of securities as set forth herein. The Purchaser hereby agrees that such Units will not be transferred or sold without registration under the Connecticut Act or exemption therefrom.

     Pinnacle FX Investments, LP

(s) For ERISA Plans Only: The fiduciary of the ERISA plan represents that he has been informed of and understands the Partnership's investment objectives, policies and strategies, and that the decision to invest "plan assets" (as such term is defined in ERISA) in the Partnership is consistent with the provisions of ERISA that require diversification of plan assets and impose other fiduciary responsibilities. The Purchaser fiduciary or Plan (i) is responsible for the decision to invest in the Partnership; (ii) is independent of the Placement Agent the General Partner or any of their affiliates; (iii) is qualified to make such investment decision; and (iv) in making such decision, the Purchaser fiduciary or Plan has not relied primarily on any advice or recommendation of the Placement Agent, the General Partner or; their Affiliates.

The foregoing representations and warranties are true and accurate as of the date hereof, shall be true and accurate as of the date of delivery of this Subscription Agreement and accompanying documents to the Partnership and shall survive such delivery. If, in any respect, these representations and warranties shall not be true and accurate prior to delivery of the payment pursuant to Paragraph 1, the undersigned shall immediately give written notice to the Partnership specifying which representations and warranties are not true and accurate and the reason therefor.

**4.    Indemnification.** The Purchaser acknowledges that he understands the meaning and legal consequences of the representations, warranties and covenants in Paragraph 3 hereof and that the Partnership and/or General Partner has relied upon such representations, warranties and covenants, and he hereby agrees to indemnify and hold harmless the Partnership, its General and Limited Partners and their respective officers, directors, controlling persons agents, and employees, from and against any and all losses, damages or liabilities due to or arising out of a breach of any representation, warranty or covenant made by the Purchaser herein. Notwithstanding the foregoing, however; no representation, warranty; covenant, acknowledgment, or agreement made herein by the Purchaser shall in any manner be deemed to constitute a waiver of any rights granted to the Purchaser under Federal or state securities laws. All representations, warranties, and covenants contained in this Subscription Agreement and the in-demnification contained in this Paragraph 4 shall survive the acceptance of this subscription.

**5.    Restrictions on Transfer.** The Purchaser understands and agrees that, in addition to the provisions regarding restrictions on withdrawal and transferability of their investment contained in the Agreement the following restriction and limitation is applicable to the Purchaser's investment in the Units pursuant to Section 4(2) of the Securities Act and Rule 506 of Regulation D promulgated thereunder:

**THE UNITS SHALL NOT BE SOLD, PLEDGED, HYPOTHECATED OR OTHERWISE TRANSFERRED UNLESS THEY ARE REGISTERED UNDER THE SECURITIES ACT AND APPLICABLE STATE SECURITIES LAWS OR ARE EXEMPT THEREFROM.**

**6.    Financial Information.** The Purchaser previously or simultaneously herewith has furnished a completed and executed Confidential Purchaser Questionnaire, the information in which is true and correct in all respects and which is hereby incorporated by reference herein.

**7.    Modification.**    Neither this Subscription Agreement nor any provision hereof shall be waived, modified, changed, discharged, or terminated except by an instrument in writing signed by the party against whom any waiver; modification, charge, discharge, or termination is sought.

**8.    Notices.** All notices, requests, consents and other communications hereunder shall be in writing and shall be deemed to have been duly made when delivered, or mailed by registered or certified mail, return receipt requested:

Pinnacle FX Investments, LP

(a) If to the Purchaser; to the address set forth on the signature page of this Subscrip tion Agreement; or (b) If to the Partnership, to the address set forth on the first page of this Subscription Agreement or at such other address as the Purchaser or the Partnership may hereafter have advised the other.

**9.   Binding Effect.** Except as otherwise provided herein, this Subscription Agreement shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, successors, legal representatives and assigns. if the   Purchaser is more than one person, the obligation of such Purchaser shall be joint and several and the agreements, representations, warranties, covenants and acknowledgments herein contained shall be deemed to be made by and be binding upon each such person and his heirs, executors, administrators, successors, legal representatives and assigns.

**10.      Entire Agreement** This Subscription Agreement contains the entire agreement of the parties with respect to the matters set fort h herein and there are no representations, covenants or other agreements except as stated or referred to herein or as are embodied in the Agreement.

**11.      Assignability.** This Subscription Agreement is not transferable or assignable by the undersigned or any successor thereto.

**12.      Applicable Law.**  This Subscription Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without reference to the principles thereof relating to the conflict of laws.

**13.      Jurisdiction and Service of Process.** The parties irrevocably consent to the jurisdiction of the courts of the state in which the Partnership maintains its principal office from time to time and of any Federal court located in such state in connection with any action or proceeding arising out of or relating to this Subscription Agreement and/or the Agreement. Each party waives personal service of any summons, complaint or other process and agrees that service thereof may be made in accordance with the provisions of the Agreement.

**14. Conflicts of Interest; Certain Disclosures.** The General Partner, the Partnership and the Placement Agent will use their best efforts to keep the information provided in this Confidential Purchaser Questionnaire strictly confidential. The General Partner; the Partnership and the Placement Agent may present this Agreement and the information provided in the Confidential Purchaser Questionnaire to such parties as they deem advisable if compelled by law or called upon to establish the availability under any Federal or state securities laws of an exemption from registration of the private placement or if the contents hereof are relevant to any issue in any action, suit or proceeding to which & the General Partner; the Partnership or the Placement Agent is a party or by which it is or may be bound.

**IN WITNESS WHEREOF** , the undersigned has executed this Subscription Agreement as or' the ___6___ day of August 2007

Amount Subscribed for: $ ___70,000.0⁻___

| Sworn to before this _6_ day of August 20 07 | Signature of Purchaser _Channenna Mordum_ |
|---|---|
| | Pinnacle FX Investments, LP |

-7-

| Notary Public or Witness (sign and print) | Typed/Printed Name of Purchaser |
|---|---|

**Type of Ownership (Check One)**

**Natural Persons:**

_✓_ Individual
_____ Joint Tenants With Rights of Survivorship
_____ Tenants in Common
_____ Tenants by the Entirety

**Entities:**

_____ Corporation
_____ Partnership
_____ Trust
_____ Pension or Profit Sharing Plan or Trust
_____ Individual Retirement Account _____
Tax Exempt Organization
_____ Estate
_____ Other (Specify)

Mailing Address 309 EAST 60th Street
NYC, NY 10022 #3E

Social Security, Social Insurance or Federal Tax 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

Identification Number of Purchaser

Accepted as of the 6th day of Ayu X 20 07

Pinnacle FX Investments, LP

By: Pinnacle FX Investments, Inc. (General Partner).

By: *Shawnna Thibodeau*
    Signature of Authorized Officer

By: *Shawnna Thibodeau*
Its: Title of Authorized Officer

-8-

**ITEM B**
**PINNACLE FX INVESTMENTS, LP**
**PURCHASER QUESTIONNAIRE (NATURAL PERSONS)**

**Name(s) of Purchaser(s) and Social Security Number:***

(1) Shawnna Thibodeau

Social
Security No.: 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

(2)_____

Social
Security No.: _____

**1. Background Information.**

(a) Home Address: 309 EAST 60ᵗʰ St. NYC, NY 10022 # 3E

E-mail: SweetThib@yahoo.com

(b) Home Telephone: 917-575-5536

(c) U.S. Citizen: Yes ✓  No ____

(d) Occupation: Self / Stuntwoman

(e) Employer: Self

(f) Business Address: N/A

(g) Business Telephone: _____ (h)

Age: 32

(i) Send Mail to: Home ✓  Office ____

Other: _____

(j) State your education and degrees earned:

Degree N/A     School _____  Years ____

(k) Are you aware that an investment in Pinnacle FX Investments, LP , is a high risk investment?

Yes ✓  No ____

(l) Do you currently own other types of investments? Yes ✓  No ____

-9-                    Pinnacle FX Investments, LP

If so, please supply the approximate value thereof:

|  | Your Investment Assets | Businesses Owned/Controlled By You |
|---|---|---|
| Marketable Securities | | $$ |
| Restricted Securities | | $$ |
| Real Estate | | $$ |
| Investment Partnerships | | $$ |
| Other Assets | | $$ |
| TOTALS | S | |

(m) Do you have a means of providing for your needs and personal contingencies?

Yes __✓__     No _____

## 2. Type of Ownership.

Indicate type of ownership subscribed for (if other than for a single individual sub scriber):

___ Joint Tenants with Rights of Survivorship
___ Tenants in Common
___ Tenants by the Entirety

## 3. Purchaser Suitability.

Please indicate whichever of the following (if any) certifications apply to you:

(a)  I certify that I am an "accredited investor" because I have an individual net Worth** (or joint net worth with my spouse) in excess of $1,000,000.

Yes____  No_✓_

(b)  I certify that I am an "accredited investor" because I had an individual income*** (not including any amounts attributable to my spouse or to property owned by my spouse) of more than $200,000 in each of the previous two (2) calendar years and I reason -ably expect to reach the same income level in the current year.

Yes____  No_✓_

-10-                                        Pinnacle FX Investments, LP

(c)   I certify that I am an "accredited investor" because I had a joint income with my spouse in excess of $300,000 in each of the previous two (2) calendar years and I reasonably expect to reach the same income level in the current year.

Yes_____ No _____✓

(d)  I certify that I am an "accredited investor" because I am an "affiliated person" of the General Partner

Yes__✓_ No _____

**IF YOU ARE UNABLE TO CERTIFY TO STATEMENT 3(a), (b) (c) OR (d) ABOVE, YOU ARE NOT QUALIFIED TO MAKE AN INVESTMENT IN THE UNITS AND MAY NOT PURCHASE ANY UNITS WITHOUT PRIOR COMPANY APPROVAL.**

**4. Professional References.**

(a) Bank References (please include the name and address of the bank and the name of an officer):

Ing
Commerce

(b) Attorney (name, firm name and address):

(c) Accountant (name, firm name and address):   AVE Consulting LLC.
C/o Vincent
9601 Wilshire Blvd.
Suite 755
Beverly Hills, Ca  90210   310-281-2667

**5. Reliance by the Partnership.**

I understand that the Partnership will be relying on the accuracy and completeness of my responses to the foregoing questions and I represent warrant and covenant to the Partnership as follows:

(a)  The answers to the above questions are complete and correct and may be relied upon by the Partnership in determining whether the Offering in connection with which I have executed this Confidential Purchaser Questionnaire is exempt from registration under the Securities Act; and

(b) I will notify the Partnership immediately of any material change in any statement made herein or any event resulting in the omission of any statement required to be made herein that occurs prior to the acceptance of my subscription.

Amount Subscribed for: $_____70,000._____

Signature of Purchaser

Print Name

-11-

_____

Signature of Co-Purchaser

_____

Typed/Printed Name of Co-Purchaser

\* If there is more than one Purchaser (other than husband and wife), a separate Confidential Purchaser Questionnaire must be completed for each such Purchaser and attached to this Confidential Purchaser Questionnaire.

\*\* For purposes of this Confidential Purchaser Questionnaire, a Purchaser's "net" worth" is equal to the  excess of total assets at fair market value over total liabilities.

\*\*\*  For purposes of this Confidential Purchaser Questionnaire, "income  means adjusted gross income, as reported for Federal income tax purposes, less any income attributable to a spouse or to property owned by a spouse, increased by the following amounts but not including any amounts attributable to a spouse or to property owned by a spouse): the amount of any tax-exempt interest income under Section 103 of the Internal Revenue Code of 1986, as amended ("the Code") received, (II) the amount of losses claimed as a limited partner in a limited partner-ship as reported on Schedule E of Form 1040 and (ill) any deduction claimed for depletion under Section 611 et. seq. of the Code.

Pinnacle FX Investments, LP

## ITEM D
### PINNACLE FX INVESTMENTS, LP ,
### LIMITED PARTNERSHIP AGREEMENT SIGNATURE PAGE

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the day and year first above written.

General Partner:

Pinnacle FX Investments, Inc.

Limited Partners:

Typed/Printed Name of Limited Partner

By: _Shawnna Thibodeau_

Limited Partner / Authorized

_Shawnna Thibodeau_

Signature, Authorized Officer

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF _California_
COUNTY OF _Los Angeles_ ss:

On this _6_ day of _August_ 20 _07_ before me, the undersigned Notary Public, in and for the jurisdiction aforesaid, personally appeared who resides at _309 EAST 60th St._
_NYC        NY        10022    #3C_, known to me (or satisfactorily proven to me) to be the person whose name is subscribed to within the foregoing instrument and who acknowledged to me that he/she executed the same for the pur poses therein contained; that the statements made therein are true to the best of his/her knowledge, information and belief; and that the execution of said agreement including the power of attorney granted thereby, is his/her own free act and deed.

In WITNESSS WHEREOF, I have hereunto set my hand and affixed my official seal on the day, month and year first above written.

My Commission Expires: _06-16-08_

Notary Public

LANA SILVER
Commission # 1490548
Notary Public - California
Los Angeles County
My Comm. Expires Jun 16, 2008

-14-

Pinnacle FX Investments, LP