UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

№ 08-CV-1662 (JFB) (ARL)

---

SHAWNNA THIBODEAU,

Plaintiff,

VERSUS

PINNACLE FX INVESTMENTS, RAZOR FX, INC., DEXTER BELL, ROLAND FRANCIS
AND MICHAEL RICHARD MCCAULL,

Defendants.

---

Memorandum and Order
November 6, 2008

---

JOSEPH F. BIANCO, District Judge:

Plaintiff Shawnna Thibodeau ("plaintiff") brings this action against defendants Pinnacle FX Investments ("Pinnacle"), Dexter Bell ("Bell"), Roland Francis ("Francis") (collectively, "defendants") and Razor FX, Inc. ("Razor") and Michael Richard McCaull ("McCaull"), asserting claims related to an alleged investment of approximately $70,000 by plaintiff and an alleged breach of an investment contract with Pinnacle in connection with that investment. Specifically, plaintiff alleges that the aforementioned defendants defrauded her in violation of Sections 6(b) and 6(o) of the Commodities Futures Exchange Act. She further asserts the following claims against defendants under New York law: (1) breach of fiduciary duty; (2) breach of contract; (3) negligence; (4) conversion; (5) common law fraud and deceit; and (6) negligent misrepresentation. Defendants Razor and McCaull have not filed an answer.

Defendants Pinnacle, Bell and Francis now move to dismiss the complaint pursuant to Rules 12(b)(2-5) of the Federal Rules of Civil Procedure on several grounds. First, defendants contend that the claims should be dismissed based on the existence of a valid forum selection clause within the contract between plaintiff and Pinnacle, which stated that any action or proceeding arising from the

agreement must be brought in the courts of the state where the partnership maintained its principal office – namely, the State of Washington.[1]

---

[1] The Court notes that defendants' motion to dismiss based on the existence of the forum selection clause in a contract does not cite to the specific rule of the Federal Rules of Civil Procedure under which they seek relief. Instead, defendants' motion states that they are moving to dismiss plaintiff's claims pursuant to Rule 12(b)(2-5). As discussed below, there is split authority within the Second Circuit regarding the appropriate procedural mechanism by which a party may seek to enforce a forum selection clause. Decisions suggest that the proper vehicle can be: (1) a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), *see AVC Nederland B.V. v. Atrium Inv. P'ship*, 740 F.2d 148, 152 (2d Cir. 1984); (2) a motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), *see Phillips v. Audio Active Ltd.*, 494 F.3d 378, 382 (2d Cir. 2007); and (3) a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), *see Evolution Online Systems, Inc. v. Koninklijke PTT Nederland N.V.*, 145 F.3d 505, 508 n.6 (2d Cir. 1998). *See generally New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 28-29 (2d Cir. 1997) ("[T]here is no existing mechanism with which forum selection enforcement is a perfect fit").

At oral argument, both sides agreed that the motion on the ground of the forum selection clause should be treated by the Court as a motion for improper venue under Rule 12(b)(3). Given the absence of any objection to this framework, the Court shall consider the forum selection clause issue pursuant to Rule 12(b)(3). *See, e.g., Person v. Google, Inc.*, 456 F. Supp. 2d 488, 492 (S.D.N.Y. 2006) ("Here, the issue will be considered under Fed. Civ. P. Rule 12(b)(3) because that is how it was framed by the parties.") (citing *J.B. Harris, Inc. v. Razei Bar Indus., Inc.*,

Second, defendants also contend that the court lacks jurisdiction over defendant Pinnacle because there is no basis for asserting personal jurisdiction over Pinnacle under N.Y. C.P.L.R. §§ 301 and 302(a). Finally, defendants move, in the alternative, to transfer the action, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Western District of Washington under the doctrine of *forum non conveniens*.

For the reasons that follow, plaintiff's complaint is dismissed without prejudice against defendants Pinnacle, Bell, and Francis based on the existence of a valid and enforceable forum selection clause. In particular, the Court finds that the contract at issue contained a presumptively enforceable forum selection clause wherein the parties agreed to litigate any claims arising from the contract in the State of Washington. Moreover, plaintiff does not allege any facts that would make the enforcement of that clause unreasonable or unjust, nor does she allege facts by which this Court could conclude that the clause is invalid. Instead, plaintiff seeks to argue that, because she is alleging fraud in the inducement of the contract as a whole, the clause should not be enforced. However, it is well settled that such a contention regarding *fraudulent inducement*

---

37 F. Supp. 2d 186, 189 (E.D.N.Y. 1998) ("The Court does not decide whether this issue might more properly have been raised by way of Rule 12(b)(6), as the issue is squarely framed by Defendants under Rule 12(b)(3) and Plaintiff does not argue that this is an improper procedural mechanism.") (internal citation omitted), *aff'd*, 181 F.3d 82 (2d Cir. 1999) (summary order)). In any event, as noted *infra*, the defendants' motion is successful under the Second Circuit standard regardless of the particular grounds utilized under Rule 12(b).

2

*in the contract as a whole* is insufficient to avoid the enforcement of a forum selection clause in an agreement; rather, there must be *fraud in connection with the inclusion of the forum selection clause itself*, which is not even alleged by plaintiff in the instant case. Plaintiff's futile attempt to distinguish the clear Supreme Court and Second Circuit authority on this issue is entirely unavailing. Accordingly, it is the determination of this Court that the forum selection clause in the governing contract is enforceable and, therefore, plaintiff's claims against defendants Pinnacle, Bell and Francis are dismissed, pursuant to Federal Rule of Civil Procedure 12(b), without prejudice to plaintiff re-filing such claims in the State of Washington.[2]

I. BACKGROUND

A. Facts

The following facts are taken from plaintiff's complaint ("Compl.") and are not findings of fact by the Court, but rather are assumed to be true for purposes of deciding this motion and are construed in a light most favorable to plaintiff, the non-moving party.

At some time before or during August of 2007, plaintiff, a resident of the State of New York, was working as a stuntwoman in Los Angeles when her colleague, Chris Gordon, introduced her to defendant Bell, the principal of Pinnacle, because plaintiff had expressed an interest in pursuing investment opportunities with the company. (Compl. ¶¶ 7, 18-23.) In early August 2007, plaintiff discussed investing with Pinnacle with Bell, who represented that Pinnacle "pool[ed] . . . investors' money, . . . and [gave] it to a foreign exchange management company to invest." (*Id.* at ¶ 26.) Bell further indicated that "he had a 'good friend' at one of these foreign exchange management companies that he knew for 'years' and completely trusted" and "that because of his relationship with his 'good friend' he was allowed to pool investors' money and invest it as if it was one big investor." (*Id.*) Based on Bell's assurances and representations, plaintiff opened an account with Pinnacle in September of 2007 by signing a Partnership and Subscription Agreement with it. (*Id.* at ¶ 30.) She invested approximately $70,000 of her personal funds. (*Id.*)

In or around January of 2008, Bell called plaintiff and informed her that due to a "'scam,'" her money had been stolen and "'everything was lost.'" (*Id.* at ¶ 33.) Bell elaborated that, rather than investing plaintiff's money with the good friend to which he had earlier referred, he had instead invested her money with defendant Razor. (*Id.* at ¶¶ 34, 36.) Defendant McCaull, the principal of Razor, held the company out as a financial services firm that traded in the spot foreign exchange market while, in fact, McCaull and his business partner were depositing dollars invested with Razor into their personal bank accounts. (*Id.* at ¶ 35.) McCaull and his partner sent investors false account statements reporting non-existent trades and profits and, when investors sought to withdraw funds from their accounts, they received money from the funds of other investors. (*Id.*)

---

[2] The Court, therefore, need not address defendants' argument regarding the lack of personal jurisdiction under New York law or the alternative motion to transfer the action to the Western District of Washington, as the Court's ruling on defendants' Rule 12(b) motion on the forum selection clause renders both of those issues moot.

Pinnacle represented on its website that it worked with foreign exchange management companies that belonged to the National Futures Association but, in fact, invested plaintiff's money in Razor, an entity which was not a member of that association. (*Id.* at ¶ 36.) Plaintiff contends that Pinnacle could have easily discovered that Razor did not belong to this association; accordingly, Pinnacle either intentionally conspired with Razor to defraud plaintiff or Pinnacle was grossly negligent in entrusting Razor with her investments. (*Id.*) Plaintiff lost the entirety of the $70,000 that she invested.

The Partnership and Subscription Agreement that plaintiff signed, which governed her agreement with Pinnacle, contained the following provision, which is pivotal to defendants' motion:

> 13. Jurisdiction and Service of Process. The parties irrevocably consent to the jurisdiction of the courts of the state in which the Partnership maintains its principal office from time to time and of any Federal court located in such state in connection with any action or proceeding arising out of or relating to this Subscription Agreement and/or the Agreement. Each party waives personal service of any summons, complaint or process and agrees that service thereof may be in accordance with the provisions of the Agreement.

(Defendants' Affidavit ("Defs.' Aff."), Ex. ¶ 13.)[3] Plaintiff acknowledges in her pleadings, and defendants agree, that Pinnacle is located in the State of Washington and that defendants Bell and Francis are residents of the State of Washington. (Compl. ¶¶ 8-10; Defs.' Aff. ¶¶ 7-9.)

B. Procedural History

On April 22, 2008, plaintiff filed her complaint. Defendants did not submit an answer or counterclaim, but rather moved to dismiss the claims against them on June 26, 2008, based on the following: (1) a valid forum selection clause, requiring the lawsuit against them be brought in the State of Washington; and (2) lack of personal

---

[3] The Court notes that, even if this motion were treated as one under Rule 12(b)(6) rather than Rule 12(b)(3), the Court could consider the language of the agreement itself because the agreement is referenced in the complaint and is integral to plaintiff's breach of contract claim and other claims in the complaint. *See Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565-66 (2d Cir. 2006) ("When a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (internal quotation marks omitted)); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (noting that for purposes of a motion to dismiss, a complaint is considered to include documents referred to therein); *Merkent v. SI Bank & Trust Spring 2004 Severance Benefit Plan*, No. 05 Civ. 2449 (JFB), 2006 WL 898086, at *1 n.1 (E.D.N.Y. Apr. 5, 2006) (considering provisions of severance plan that was referenced in the complaint as part of motion to dismiss).

jurisdiction over Pinnacle. Defendants also moved, in the alternative, to transfer this action to the United States District Court for the Western District of Washington. Plaintiff filed her opposition to defendants' motion on July 30, 2008. On August 8, 2008, defendants submitted their reply. Oral argument was held on November 3, 2008.

II. STANDARD OF REVIEW

It is well settled that "[p]arties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006); *see Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964) ("parties to a contract may agree in advance to submit to the jurisdiction of a given court"). Moreover, the Second Circuit has a "'strong policy' of enforcing forum selection agreements." *TSR Silicon Res., Inc. v. Broadway Com. Corp.*, 2007 U.S. Dist. LEXIS 92121, at *15 (S.D.N.Y. Dec. 14, 2007); *accord Zuckerman ex rel. Zuckerman v. Camp Laurel*, 2008 WL 4386837, at *2 (S.D.N.Y. Sept. 24, 2008).

However, noting that "there is no existing mechanism with which forum selection enforcement is a perfect fit," *see New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997), the Second Circuit has "refused to pigeon-hole these claims into a particular clause of [Federal Rule of Civil Procedure] 12(b)," *Asoma Corp. v. SK Shipping Co.*, 467 F.3d 817, 822 (2d Cir. 2006), but has adopted a clear framework for ruling on such claims regardless of the procedural mechanism utilized. *See id.*

Under the Second Circuit's framework, the moving party must provide evidence of a valid forum selection clause, by demonstrating first, that the clause was reasonably communicated to the party challenging enforcement, *see Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 9 (2d Cir. 1995), second, that the clause is mandatory rather than permissive in nature, *see Phillips v. Audio Active Ltd.*, 494 F.3d 378 (2d Cir. 2007) (citing *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs. Inc.*, 22 F.3d 51, 53 (2d Cir. 1994)), and, third, that the claims involved are subject to the clause, *see Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1358-61 (2d Cir. 1993).

The burden then shifts to the non-moving party "to make a 'strong showing' in order to overcome the presumption of enforceability," *Asoma Corp.*, 467 F.3d at 822 (quoting *New Moon Shipping Co.*, 121 F.3d at 29), by demonstrating that enforcement would be "'unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching.'" *Phillips*, 494 F.3d at 384 (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).

The non-moving party's burden of proof is "analogous to that which is imposed on a plaintiff to prove that the federal court has subject matter jurisdiction over his suit or personal jurisdiction over the defendant." *New Moon Shipping Co.*, 121 F.3d at 29. Without resolving the question of whether to treat the motion to dismiss as a 12(b)(1) or 12(b)(3) motion, the Second Circuit held in *New Moon Shipping* that "at the initial stage of litigation, a party seeking to establish jurisdiction need only make a *prima facie* showing by alleging facts which, if true, would support the court's exercise of jurisdiction." 121 F.3d at 29 (citing *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir.

2005) ("If the court chooses to rely on pleadings and affidavits, the plaintiff need only make a *prima facie* showing of [venue].") (quoting *CutCo Indus. v. Naughton*, 806 F.2d 361, 364-65 (2d Cir. 1986) and citing *Sunward Elecs. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004)); *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981). These facts must be viewed in the light most favorable to the plaintiff. *See CutCo Indus. v. Naughton*, 806 F.2d at 364-65; *AVC Nederland B.V. v. Atrium Inv. P'ship*, 740 F.2d 148, 149 (2d Cir. 1984). Disputed facts may be resolved against the non-moving party only after an evidentiary hearing, where the plaintiff must demonstrate venue by a preponderance of the evidence. *See New Moon Shipping*, 121 F.3d at 29 ("A disputed fact may be resolved in a manner adverse to the plaintiff only after an evidentiary hearing . . . . [A] party seeking to avoid enforcement of such a contractual clause is also entitled to have the facts viewed in the light most favorable to it, and no disputed fact should be resolved against that party until it has had an opportunity to be heard.") (citations omitted); *Gulf Ins. Co.*, 417 F.3d at 355 ("[I]f the court holds an evidentiary hearing . . . the plaintiff must demonstrate [venue] by a preponderance of the evidence.") (quoting *CutCo Indus.*, 806 F.2d at 364-65) (additional citation omitted)); *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139 (9th Cir. 2004) ("To resolve such motions when genuine factual issues are raised, it may be appropriate for the district court to hold a Rule 12(b)(3) motion in abeyance until the district court holds an evidentiary hearing on the disputed facts. Whether to hold a hearing on disputed facts and the scope and method of the hearing is within the sound discretion of the district court.") (citations omitted).

The Court now reviews defendants' motion pursuant to this framework established by the Second Circuit. As set forth below, even assuming plaintiff's facts to be true and viewing the facts in the light most favorable to plaintiff, the Court concludes that the contract between plaintiff and defendants contains a valid and enforceable forum selection clause in which plaintiff agreed to litigate the claims in the instant lawsuit in the State of Washington. Therefore, because plaintiff has alleged no facts that would provide grounds to invalidate the forum selection clause, discovery and/or an evidentiary hearing on this issue is unnecessary, and defendants' motion to dismiss should be granted.

III. DISCUSSION

A. Presumption of Enforceability

Under the analysis prescribed by the *Asoma* decision, defendants must first demonstrate the existence of a valid forum selection clause in the relevant contract. *See Asoma Corp. v. SK Shipping Co.*, 467 F.3d 817, 822 (2d Cir. 2006). The Court will first determine whether the defendants have met the requirements which entitle them to a presumption of enforceability with respect to the clause. None of these requirements are contested by plaintiff, and they are clearly satisfied in the instant case.

With respect to the first requirement, the Court finds, and plaintiff does not contest, that the clause was reasonably communicated to the plaintiff. The contract was fourteen pages long, the terms of which, including the clause at issue, were clearly delineated in the first seven pages. (Defs.' Aff., Ex. A.). *See, e.g., Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991); *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7 (2d Cir. 1995). The clause provided

6

plaintiff with both notice and the opportunity to reject the individual clause or the contract as a whole. *See, e.g., Mercury West A.G., Inc. v. R.J. Reynolds Tobacco Co.*, 2004 WL 421793, at *5 (S.D.N.Y. Mar. 5, 2004) (the "forum selection clause was in no way hidden from [the non-moving party] or buried in contract minutia. Rather, the clause was its own paragraph, set-off by a title clearly indicating its purpose."); *accord Computer Servs. Group, Inc. v. Apple Computer, Inc.*, 2002 WL 575649, at *1 (S.D.N.Y. Apr. 16, 2002). As to the second requirement, the language stating that "the parties irrevocably consent" to the specified jurisdiction leaves no doubt that the clause is mandatory rather than permissive. (Defs.' Aff., Ex. A ¶ 13.) Finally, the clause clearly states that it applies to "any action or proceeding arising out of or relating to this Subscription Agreement and/or the Agreement." (*Id.*) Since plaintiff's claims arise from the alleged breach of the Subscription Agreement, (*see generally* Compl.), her claims are necessarily subject to the clause.

Accordingly, defendants have established that the forum selection clause is presumptively enforceable.[4]

B. Allegation of Fraud

Plaintiff argues, in an effort to overcome this presumption of enforceability, that the forum selection clause is invalid because she was fraudulently induced to sign the contract. (Plaintiff's Memorandum of Law, at 3.) However, construing the alleged facts in the light most favorable to the plaintiff, the Court concludes as a matter of law that plaintiff has failed to make the "strong showing" required to overcome the presumption of enforceability. Specifically, although plaintiff has alleged that she was fraudulently induced to enter the contract, she does not allege that the forum selection clause *itself* was also a product of fraud, which she must do in order to invalidate the clause on this ground.

Under the standard set forth by the Supreme Court in *M/S Bremen v. Zapata Off-Shore Company*, forum selection clauses are *prima facie* valid and should control questions of venue absent a "strong showing" that enforcement would be "unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." 407 U.S. 1, 15 (1972). Thus, a forum selection clause is unreasonable: (1) if its incorporation into

---

[4] In addition, the Court concludes, as a matter of law, that the clause can be invoked in this case by the signatory, Pinnacle, as well as defendants Bell and Francis. In particular, a non-signatory may invoke the forum selection clause if the party is "closely related" to the signatory; namely, "[t]he relationship between the non-party and the signatory must be sufficiently close so that the non-party's enforcement of the forum selection clause is 'foreseeable' by virtue of the relationship between the signatory and the party sought to be bound." *Direct Mail Production Services Ltd. v. MBNA Corp.*, No. 99 Civ. 10550 (SHS), 2000 WL 1277597 (S.D.N.Y. Sept. 7, 2000) (quotations and citations omitted) (collecting cases); *accord Weingard v. Telepathy, Inc.,* No. 05 Civ. 2024 (MBM), 2005 WL 2990645, at *5 (S.D.N.Y. Nov. 7, 2005); *Nanopierce Technologies, Inc. v. Southride Capital Mgmt. LLC,* No. 02 Civ. 767 (LBS), 2003 WL 22882137, at *5 (S.D.N.Y. Dec. 4, 2003) (citation omitted). Here, because defendants Bell and Francis are alleged to be principals of Pinnacle and are being sued in connection with their activities at Pinnacle, it was foreseeable to plaintiff that the forum selection clause would be applicable to any lawsuit against these closely-related individuals in connection with their work at Pinnacle and, thus, the above-referenced test regarding non-signatories is met as to Bell and Francis.

7

the agreement was the result of fraud or overreaching; (2) if the complaining party will be deprived of his day in court due to the grave inconvenience or unfairness of the selected forum; (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) if the clause contravenes a strong public policy of the forum state. *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993) (citing *M/S Bremen*, 407 U.S. at 10, 15, 18, and *Carnival Cruise Lines, Inc.*, 499 U.S. at 595-96); *S.K.I. Beer Corp. v. Baltika Brewery*, 443 F. Supp. 2d 313, 316 (E.D.N.Y. 2006) (same) (citations omitted).

Plaintiff does not allege any facts under any of the above-referenced grounds other than the one related to fraud.[5] In particular, plaintiff argues that, because she was fraudulently induced into entering the whole agreement, the forum selection clause should not be enforced. However, in *Scherk v. Alberto Culver Co.*, 417 U.S. 506 (1974), the Supreme Court made clear that *M/S Bremen*'s exception for fraud or overreaching

> does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud . . . the clause is unenforceable. Rather, it means that an arbitration or forum-selection clause in a contract is not enforceable if the *inclusion of that clause in the contract* was the product of fraud or coercion.

417 U.S. at 519 n.14 (emphasis in original). As the Seventh Circuit has explained:

> [A] dispute over a contract does not cease to be such merely because instead of charging breach of contract the plaintiff charges a fraudulent breach, or fraudulent inducement, or fraudulent performance . . . . The reason is not that contract remedies always supersede fraud remedies in a case that arises out of a contract; sometimes they do, sometimes they don't . . . . It is that the existence of multiple remedies for wrongs arising out of a contractual relationship does not obliterate the contractual setting, does not make the dispute any less one arising under or out of or concerning the contract, and does not point to a better forum for adjudicating the parties' dispute than the one they had selected to resolve their contractual disputes.

*American Patriot Ins. Agency v. Mutual Risk Management, Ltd.*, 364 F.3d 884, 889 (7th Cir. 2004) (internal citation omitted).

Thus, pursuant to *Scherk*, courts have routinely held that a plaintiff's allegations related to fraudulent inducement of the contract as a whole are insufficient to invalidate a forum selection clause; instead, a plaintiff must allege fraudulent inducement with respect to the clause itself. *See, e.g., Mercury West A.G., Inc.*, 2004 WL 421793, at

---

[5] Counsel for plaintiff confirmed at oral argument, consistent with plaintiff's opposition papers, that plaintiff's challenge to the enforcement of the forum selection clause was limited to fraudulent inducement of the contract as a whole.

8

*4 ("in order to invalidate the forum selection clause, the clause itself would have to have been the product of fraud"); *Gen. Elec. Capital Corp. v. Mehta*, 2002 WL 511553, at *2, n.6 (S.D.N.Y. Apr. 4, 2002) ("A party challenging a forum selection clause on the basis of fraudulent inducement must allege facts with respect to the specific clause, not the contract as a whole."); *J.B. Harris, Inc. v. Razei Bar Industries, Ltd.,* 37 F. Supp. 2d 186, 190-91 (E.D.N.Y. 1998) ("Plaintiff argues that because the parties' Agreement was purportedly procured by fraud, the forum selection clause should not be enforced . . . . In the Court's view, Plaintiff's position is without merit and is inconsistent with the case law. Fraud in the inducement of the Agreement, as distinct from fraud in the inducement of the forum selection clause specifically, is insufficient to defeat the forum selection clause . . . . Plaintiff produces no evidence that Defendants defrauded it in specifically inducing it to enter into the forum selection clause, and thus the Court will not refuse to honor the clause on this basis."), *aff'd,* 181 F.3d 82 (2d Cir. 1999) (summary order); *Arkay Packaging Corp. v. W.R. Chestnut Engineering, Inc.*, 1997 WL 1068673, at *2 (E.D.N.Y. Jul. 21, 1997) (holding that plaintiff's allegation of fraud did not render the forum selection clause invalid because the fraud alleged did not relate specifically to the inclusion of the clause in the contract at issue); *Stamm v. Barclays Bank of NY*, 960 F. Supp. 724, 729 (S.D.N.Y. 1997) (noting that a "claim of fraud in the inducement of a contract is insufficient to invalidate a forum selection or choice-of-law clause found in that contract"); *AI Credit Corp. v. Liebman*, 791 F. Supp. 427, 430 (S.D.N.Y. 1992) (a "party may not . . . avoid the effect of a forum selection clause by merely alleging fraud or coercion in the inducement of the contract at issue").

Plaintiff does not allege that the inclusion of the forum selection clause itself into the Subscription Agreement was a product of fraud, but rather argues that she need not make such an allegation because she was fraudulently induced into entering the contract as a whole, which she claims necessarily invalidates the clause. Plaintiff makes this claim despite controlling case law to the contrary and her attempt to distinguish that authority – namely, the *Scherk* case – from the immediate action is not persuasive. In *Scherk*, the Supreme Court enforced an arbitration clause embedded in a contract governing international commercial transactions between the parties despite allegations from the non-moving party that it was fraudulently induced into entering the contract. *See Scherk*, 417 U.S. 506. Plaintiff attempts to distinguish *Scherk* by arguing that "the most important consideration in the case – and upon which the case was decided – was the existence of an international contract and the important policy considerations inherent in such a contract." (Plaintiff's Memorandum of Law, at 8.) Plaintiff further contends that "the factors that were significant in the determination of the *Scherk* Court were the existence of an international contract; the existence of an arbitration agreement pursuant to the Arbitration Act; and the existence of a 'specialized' forum selection clause," (*id*. at 9), and therefore the *Scherk* Court's plain language stating that forum selection clauses are invalid only "if the inclusion of [the] clause in the contract was the product of fraud or coercion" is inapplicable here.

Plaintiff's attempt to distinguish *Scherk* on these various grounds is entirely without merit. Neither the language nor the analysis in *Scherk* is limited to contracts involving international parties and/or arbitration agreements. In fact, the Second Circuit has on

9

two separate occasions rejected the precise contention made by the plaintiff here regarding the purported limited application of *Scherk*. In particular, in *Bense v. Interstate Battery System of America, Inc.,* 683 F.2d 718 (2d Cir. 1983), the Second Circuit upheld a forum selection clause of a franchise contract involving domestic companies which called for all actions to be brought in Dallas County, Texas. In reaching this decision, the Second Circuit explicitly held that the Supreme Court's decisions in *M/S Bremen* and *Scherk* are not limited to cases involving international companies or questions:

> [Appellant] argues that *The Bremen* only applies to cases brought under federal admiralty jurisdiction. This position lacks merit in light of the *Scherk* Court's adoption of and reliance upon *The Bremen* in a case that involved federal jurisdiction other than admiralty. Furthermore, although *Scherk* and *The Bremen* both arose in an international context, we see no reason why this should preclude the application of *The Bremen* Court's reasoning to domestic suits. This position is bolstered by *The Bremen* Court's statement that the enforcement of forum-selection clauses is simply "the other side of the proposition recognized" in *National Equipment Rental v. Szukhent*, *supra*, a case which involved no international question.

683 F.2d at 721. Similarly, in *Luce v. Edelstein,* 802 F.3d 49, 57 (2d Cir. 1986), the Second Circuit again emphasized, quoting *Bense*, the application of *Scherk* to forum selection clauses in domestic cases in the non-arbitration context and thereby rejected the exact argument plaintiff asserts in the instant case:

> Plaintiffs' attempts to distinguish these cases [i.e., *Scherk*, *M/S Bremen*, and *AVC Nederland*] as limited to the international context or as grounded in the policies of arbitration are unavailing. As we stated in *Bense v. Interstate Battery System of America, Inc.,* 683 F.2d 718, 721 (2d Cir. 1982), "although *Scherck* [sic] and *The Bremen* both arose in an international context, we see no reason why this should preclude the application of *The Bremen* Court's reasoning to domestic suits." Moreover, both *AVC Nederland* and *Bense* involved judicial, rather than arbitral, forums.

802 F.2d at 57; *see also First Interstate Leasing Service, A Division of First Interstate Credit Alliance, Inc. v. Sagge,* 697 F. Supp. 744, 746 n.3 (S.D.N.Y. 1988) ("Although many forum-selection cases, such as *The Bremen* and *AVC Nederland*, occur in international situations, their reasoning is equally applicable to domestic cases.").

Consistent with this well-settled case authority, courts in this Circuit have repeatedly held that non-arbitration forum selection clauses in the domestic context are valid despite a contention that the contract as

a whole was fraudulently induced. *See, e.g., Person v. Google,* 456 F. Supp. 2d 488, 494 (S.D.N.Y. 2006) (enforcing forum selection clause requiring action be brought in California and holding that "the fraudulent actions capable of overcoming the presumption of validity for a forum selection clause must be directly related to that clause, not the contract more generally"); *A.I. Credit Corp. v. Liebman*, 791 F. Supp. 427, 430 (S.D.N.Y. 1992) (enforcing forum selection clause requiring suit to be brought in New York and holding: "Here, Defendant merely alleges that he was induced to purchase the limited partnership interests on the basis of fraud and coercion and that his relationship with Colonial was characterized by unequal bargaining power. He does not state that the forum selection clause itself was made a part of the contract by means of fraud or overreaching. Thus, Defendant has failed to show that the forum selection clause is unenforceable as 'unreasonable under the circumstances.'"); *Ritchie v. Carvel Corp.,* 714 F. Supp. 700, 703 (S.D.N.Y. 1989) (enforcing forum selection clause requiring action to be brought in Supreme Court of State of New York in Westchester County and holding : "A forum selection clause is to be enforced, except where the *clause itself* is procured by fraud. Plaintiffs do not allege that Carvel made any representations concerning the forum selection clause itself.") (footnote omitted) (citing *Scherk*, 417 U.S. at 519 n.14).

In sum, consistent with *Bense* and *Luce*, this Court rejects plaintiff's narrow construction of *Scherk* and holds that a claim of fraudulent inducement in the contract as a whole, without any allegation that the forum selection clause itself was procured by fraud, does not provide a ground for this Court to refuse to enforce a forum selection clause. Here, plaintiff has not alleged that the clause itself was procured by fraud. Nor has plaintiff alleged any other grounds for finding that the enforcement of the forum selection should not be enforced. Thus, even viewing the facts as plead in the light most favorable to the plaintiff, the Court finds that she has failed to overcome the presumption of enforceability of the forum selection clause in the contract from which the instant action arose. The clause was reasonably communicated to the plaintiff and is mandatory in nature. Further, the clause is, by its plain language, applicable to the dispute which gives rise to plaintiff's claims. Finally, plaintiff has failed to allege any facts suggesting that enforcement of the clause would be "unreasonable or unjust" or "that the clause [is] invalid for such reasons as fraud or overreaching." *Phillips*, 494 F.3d at 384 (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). Accordingly, the forum selection clause, requiring claims be brought in the State of Washington, should be enforced.

IV. CONCLUSION

For the reasons set forth herein, defendants' motion to dismiss the complaint is granted as to defendants Pinnacle, Bell, and Francis, without prejudice to such claims being re-filed against those defendants in the State of Washington. The claims against defendants Razor and McCaull remain pending in this District.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: November 6, 2008
 Central Islip, New York

* * *

The attorney for plaintiff is Kevin Conway, Esq., Conway & Conway, 1700 Broadway, 31st Floor, New York, New York 10019. The attorney for defendants Pinnacle FX Investments, Dexter Bell and Roland Francis is Jan Meyer, Esq., 1029 Teaneck Road, 2nd Floor, Teaneck, NJ 07666.